**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHNNY PERTILLAR,**

        **Plaintiff,**

   **v.**

**AAA WESTERN AND CENTRAL**
**NEW YORK et al.,**

       **Defendants.**
_____

         **5:16-cv-238**
         **(GLS/TWD)**

**APPEARANCES:**     **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Bosman Law Firm, LLC   A.J. BOSMAN, ESQ.
201 West Court Street
Rome, NY 13440

**FOR THE DEFENDANTS:**
Bond, Schoeneck & King, PLLC  ERIN S. TORCELLO, ESQ.
Buffalo Office       JAMES J. ROONEY, ESQ.
Avant Building, Suite 900
200 Delaware Avenue
Buffalo, NY 14202

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Johnny Pertillar commenced this action against his employer, AAA Western and Central New York (AAA); supervisors, Rollin Skellington, Joseph Britton, Lin Johnson, and Rand Walser; and John Doe(s) and Jane Doe(s), alleging hostile work environment, discrimination, retaliation, and New York state constitutional claims. (Am. Compl., Dkt. No. 21, Attach. 3.[1]) Pending is a motion to dismiss filed by AAA, Skellington, and Britton,[2] (Dkt. No. 16), and Pertillar's cross-motion to amend his complaint, (Dkt. No. 21). For the following reasons, Pertillar's cross-motion to amend is granted, and defendants' motion to dismiss is granted in part and denied in part.

### II. Background

---

[1] As discussed below, *see infra* Part IV.A, the court grants Pertillar's cross-motion to amend his complaint. As such, the court considers defendants' motion to dismiss as against the yet-to-be-filed amended complaint, a proposed version of which has been filed. (Dkt. No. 21, Attach. 3.) The court agrees with defendants that purposes of judicial economy and efficiency are served by doing so, (Dkt. No. 22 at 1 n.2), and hereafter refers to the proposed amended complaint as the amended complaint.

[2] Hereafter, the court's use of "defendants" refers only to these moving defendants.

2

A.    Facts[3]

Pertillar, who is African-American, has been employed by AAA since about January 2012 and is currently a "tow operator."  (Am. Compl. ¶¶ 5, 12.)  From on or about the date that Pertillar was hired until June 2014, he "was constantly harassed by . . . [his supervisor] Rand Walser and others."  (*Id.* ¶ 14.)  Walser "hid[] behind trucks and t[ook] pictures of P[ertillar], hoping he would catch P[ertillar] doing something wrong" and "treated P[ertillar] and other African-American employees in a disrespectful manner, exhibit[ed] a preference for [w]hite employees and award[ed] them greater privileges."  (*Id.*)  Pertillar complained about Walser's conduct to management and Human Resources but no corrective action was taken, and thereafter Walser and others "intensified their discriminatory treatment of P[ertillar]."  (*Id.* ¶ 15.)

In September 2013, Pertillar filed a charge of discrimination and retaliation with the U.S. Equal Opportunity Commission (EEOC).  (*Id.* ¶ 16; Dkt. No. 16, Attach. 2.[4])

---

[3] Under Federal Rule of Civil Procedure 12(b)(6), the facts are drawn from Pertillar's amended complaint and presented in the light most favorable to him.

[4] The court takes judicial notice of the EEOC documents submitted by defendants, as they are "matters of public record, and their authenticity is not disputed."  *Dollinger v. State Ins. Fund*, 44 F. Supp. 2d 467, 472 (N.D.N.Y. 1999).

> Thereafter . . . Walser and others further intensified their discriminatory and retaliatory treatment of P[ertillar] . . . includ[ing]: almost running [him] over with a truck, constantly singling [him] out, berating [him], attempting to turn co-workers against [him], soliciting negative opinions about [him], finding fault with [him] and his performance, monitoring and photographing [him], assigning [him] a dangerous truck with no seat belts[,] and other major problems, etc.

(Am. Compl. ¶ 17.)  Pertillar made numerous complaints about Walser's conduct, but no corrective action was taken until a Caucasian employee complained and Walser was terminated.  (*Id.* ¶ 18.)  Pertillar has also been "watched" and "labeled as [a] complainer[], pot stirrer[], [and] back stabber[]" by fellow AAA employees.  (*Id.* (internal quotation marks omitted).)

Pertillar filed a complaint with the New York State Division of Human Rights (NYSDHR) in September 2014, which was cross-filed with the EEOC.  (*Id.* ¶ 19; Dkt. No. 16, Attach. 4 at 8.)  Thereafter, Pertillar was passed over for a promotion in favor of defendant Skellington, a Caucasian employee who was not qualified for the position.  (Am. Compl. ¶ 20.)  He filed another complaint with the NYSDHR in November 2014, which was also cross-filed with the EEOC.  (*Id.* ¶ 21; Dkt. No. 16, Attach. 7 at 5.)  Pertillar was thereafter "subjected to an excessive three . . . day

4

suspension without pay and [a] 'final written warning' in December 2014."
(Am. Compl. ¶ 22.)

Defendants Skellington and Britton prompted this disciplinary action
by making "false accusations impugning [Pertillar's] behavior at work and
his work performance." (*Id.* ¶ 23.) Skellington and Britton "made
statements to other [AAA] employees . . . that they wanted to 'figure out'
how to discipline P[ertillar] and were heard complaining that they were not
allowed to do so without the participation of Human Resources." (*Id.*)
They also made false accusations that Pertillar refused calls, and when he
complained of this, "his complaints were dismissed and no corrective
action [was] taken." (*Id.* ¶ 24.)

## B.   Procedural History

Prior to the instant action, Pertillar filed a number of charges with the
EEOC, some of which are mentioned above. In September 2013, he filed
a charge with the EEOC, and in December 2013, he received a "Dismissal
and Notice of Rights" from the EEOC (right to sue notice). (Dkt. No. 16,
Attachs. 2, 3.) Pertillar filed a second charge with the EEOC in
September 2014 and received another right to sue notice in April 2015.

(Dkt. No. 16, Attach. 4 at 8; Attach. 6.)[5]  A third charge with the EEOC was filed by Pertillar in November 2014; no right to sue notice was issued. (Dkt. No. 16, Attach. 7 at 5; Attach. 1 ¶¶ 11, 14.)  Pertillar filed a fourth charge with the EEOC in April 2015, and on October 29, 2015, the EEOC issued a right to sue notice.  (Dkt. No. 16, Attachs. 9, 11, 1 ¶¶ 15, 18.) Finally, Pertillar filed a fifth charge with the EEOC in August 2015, but no right to sue notice was issued.  (Dkt. No. 16, Attach. 12 at 8; Attach. 1 ¶¶ 19, 21.)

The instant action was commenced in this court by removal from New York Supreme Court.  (Dkt. No. 1.)  As a complaint had not been filed prior to removal, defendants filed a demand for complaint on March 1, 2016.  (Dkt. No. 6.)  Pertillar filed a complaint on March 24, 2016. (Compl., Dkt. No. 11.)  Defendants then filed the pending motion to dismiss, (Dkt. No. 16), which Pertillar opposed and at the same time filed the pending cross-motion to amend his complaint, (Dkt. No. 21).

Pertillar's amended complaint asserts claims for violations of rights

_____

[5] Technically, Pertillar filed a charge with the NYSDHR, which was "sent to the EEOC for dual filing purposes."  (Dkt. No. 16, Attach. 4 at 8.)  But this is a distinction without a difference for purposes of this Memorandum-Decision and Order, so the court simply refers to such dual filings as a filing with the EEOC.

under (1) Title VII of the Civil Rights Act (Title VII)[6] against AAA, (Am. Compl. ¶¶ 30-31); (2) 42 U.S.C. § 1981 (Section 1981) against defendants, (*id.* ¶¶ 33-34); (3) the New York Constitution against defendants, (*id.* ¶¶ 36-37); and retaliation claims under (4) Title VII against AAA, (*id.* ¶¶ 39-40); (5) Section 1981 against defendants, (*id.* ¶¶ 42-43); and (6) the New York Constitution against defendants, (*id.* ¶¶ 45-46).[7]

## III.  Standard of Review

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint fails "to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 12(b)(6).  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV.  Discussion

### A.    Pertillar's Cross-Motion to Amend

Defendants do not oppose Pertillar's cross-motion to amend.  (Dkt.

---

[6] 42 U.S.C. §§ 2000e-2000e-17.

[7] Pertillar asserted a number of claims in his complaint that he subsequently dropped from his amended complaint.  (Compl.; Dkt. No. 22 at 1 n.3.)  Because the court grants his cross-motion to amend, *see* Part IV.A, these dropped claims are not at issue.

No. 21; Dkt. No. 22 at 1 n.2.)  Under Fed. R. Civ. P. 15(a)(2) and Local

Rule 7.1(b)(3), the cross-motion to amend is granted.  *See Burns v.*

*Trombly*, 624 F. Supp. 2d 185, 197 (N.D.N.Y. 2008).

**B.    Defendants' Rule 12(b)(6) Motion**

    *1.    Right to Sue Notices and Title VII Statute of Limitations*

      "The prerequisites for a suit under Title VII include a timely filed

administrative charge and timely institution of the suit after receipt of a

right-to-sue notice."  *Criales v. Am. Airlines, Inc.*, 105 F.3d 93, 95 (2d Cir.

1997) (citing 42 U.S.C. §§ 2000e-5(e)(1), (f)(1)).  Title VII "requires

commencement of the civil action within 90 days of receipt of the EEOC's

right-to-sue notice," and that time limit "begins to run upon plaintiff's

receipt of the right-to-sue notice and operates as a statute of limitations."

*Brown v. Research Found. of SUNY*, No. 08–CV–592, 2009 WL 1504745,

at *7 (N.D.N.Y. May 28, 2009), *aff'd sub nom. Brown v. Research Found.*

*of SUNY Oneonta*, 381 F. App'x 119 (2d Cir. 2010).  Pertillar received

right to sue notices in December 2013 and April 2015 for his first two

EEOC charges, respectively, (Dkt. No. 16, Attachs. 3, 6), but did not

commence the instant action in state court until January 2016, (Am.

Compl. ¶ 27).  He did, however, receive a right to sue notice for his fourth

8

EEOC charge in or around October 2015.  (Dkt. No. 16, Attach. 11.)
Defendants have not demonstrated that the instant action was not timely
commenced within ninety days of Pertillar's receipt of that notice.[8]

However, under Title VII, to the extent that Pertillar's claims in the
instant suit are based on the same facts as those contained in his first two
EEOC charges—charges for which he received right to sue notices but
failed to timely commence a suit—those claims are time-barred.  *See
McLeod v. Lowe's Home Improvement*, No. 1:09–CV–834, 2010 WL
4366901, at *5-6 (N.D.N.Y. Oct. 28, 2010) (citing *Lo v. Pan Am. World
Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (per curiam)); *Hill v.
Rayboy-Brauestein*, 467 F. Supp. 2d 336, 370 (S.D.N.Y. 2006).[9]  Thus,
Pertillar's Title VII claims cannot be supported by facts in his first two
EEOC charges, which include Walser's conduct and Pertillar being

---

[8] Defendants argue that the instant action was commenced "on or about January 29, 2016 [in state court] . . . 91 days after the EEOC issued its [r]ight to [s]ue notice on October 29, 2015."  (Dkt. No. 16, Attach. 14 at 8.)  But "[t]he 90-day statutory period is triggered by the date of *receipt* of the [right to sue] [n]otice."  *Ortiz v. Stickley Furniture*, No. 91–CV–1195, 1993 WL 206269, at *4 (N.D.N.Y. June 7, 1993) (emphasis added).  "In other words, the date the [right to sue] [n]otice was signed is irrelevant because the time within which to file the complaint does not begin to run until the [right to sue] [n]otice actually has been received by the plaintiff."  *Id.*  Going forward, defendants are free to renew the argument that Pertillar did not commence the instant action within ninety days of receiving the right to sue notice.

[9] "Otherwise, the time limitations of [Title VII] would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional . . . [r]ight to [s]ue [notices] whenever they pleased."  *Lo*, 787 F.2d at 828.

assigned a dangerous truck.[10]  (*Compare* Am. Compl. ¶¶ 14-18, *with* Dkt.

No. 16, Attach. 2, *and* Dkt. No. 16, Attach. 4 at 14-45.)

> 2.   *Title VII Claims*

Although defendants are correct that Pertillar "d[id] not specify

whether [his claims are] based on [discrimination] or hostile work

environment harassment," (Dkt. No. 22 at 2), Pertillar's opposition

mentions both, (Dkt. No. 21 at 1, 11, 14), so the court will analyze both.

*See Sims v. City of N.Y.*, No. 08 Civ. 5965, 2010 WL 3825720, at *1

(S.D.N.Y. Sept. 30, 2010).  For the reasons below, the court dismisses

Pertillar's hostile work environment and discrimination claims but does not

dismiss his retaliation claim under Title VII.[11]

> a.   *Hostile Work Environment*

> In order to establish a hostile work environment claim under Title
> VII, a plaintiff must produce enough evidence to show that the
> workplace is permeated with discriminatory intimidation, ridicule,
> and insult, that is sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive
> working environment.

---

[10] Pertillar's continuing violation argument is inapposite, as it addresses whether a charge filed with the EEOC is timely.  (Dkt. No. 21 at 10-11.)  Nothing in his opposition addresses why Title VII's requirement to bring suit within ninety days of receipt of a right to sue notice should be disregarded.  (*Id.* at 10-13.)

[11] Pertillar's Title VII claims are against AAA only.  (Am. Compl. ¶¶ 30, 39.)

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal marks, footnote, and citation omitted).  "In considering whether a plaintiff has met this burden, courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance."  *Id.* (internal quotation marks and citation omitted).  "Moreover, the test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive."  *Id.* (internal quotation marks and citation omitted).

Here, Pertillar has failed to state a claim for a hostile work environment.  As explained above, *see supra* Part IV.B.1, Pertillar's descriptions of harassment that were in his first two EEOC complaints, (Am. Compl. ¶¶ 14, 17), are not part of his timely claims.  The remaining allegations regarding Skellington's and Britton's "targeting [of] P[ertillar] for discipline based on false accusations impugning his behavior at work and his work performance," including false reports of refusing calls, (*id.* ¶¶ 23,

24), do not constitute conduct that was so severe or pervasive as to alter the conditions of Pertillar's employment. *See Zuk v. Onondaga County*, No. 5:07–CV–732, 2010 WL 3909524, at *17 (N.D.N.Y. Sept. 30, 2010), *aff'd*, 471 F. App'x 70 (2d Cir. 2012). And even if they did, "[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . *protected characteristic*, such as race or national origin." *Rivera*, 743 F.3d at 20 (internal quotation marks and citation omitted). Pertillar makes no allegation that Skellington's or Britton's conduct had anything to do with race. (Am. Compl. ¶¶ 23, 24).

Finally, Pertillar's allegation that defendants "created a racially discriminatory work environment hostile to African-American employees," (*id.* ¶ 25), is a "naked assertion[] devoid of further factual enhancement," and the court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (internal quotation marks and citation omitted).

       *b.*    *Discrimination*

12

Under Title VII, "[t]o establish a claim of racial discrimination a [plaintiff] must show: (1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks and citation omitted).  "[A]t the initial stage of a litigation, the plaintiff's burden is minimal—he need only plausibly allege facts that provide at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015) (internal quotation marks and citation omitted).

Pertillar alleges that he "was qualified for the [lead driver] position[] [but] was passed over for promotion to [l]ead [d]river in favor of a Caucasian employee who was not qualified for the position," and that "[t]he non-selection of P[ertillar] for the position of [l]ead [d]river was based in whole or part on his race and/or protected activity."  (Am. Compl.

¶ 20.)[12]  This is legally insufficient under Second Circuit case law.

Although the amended complaint generally alleges that Pertillar was

passed over for a promotion while a white individual, who was allegedly

less qualified, was promoted, the amended complaint fails to provide

meaningful specifics of the alleged difference in qualifications, let alone

discriminatory intent.  *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d

63, 68 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1202 (2016).[13]  Without any

specificity as to the qualifications considered for each position and without

any reference to specific statements or individual circumstances that

suggest discriminatory treatment, Pertillar's allegations do not support an

inference that AAA acted with a discriminatory purpose.  *See id.* at 69.

For all that one can tell from the amended complaint, it is equally possible

that Pertillar was not promoted for valid, non-discriminatory reasons.  *See*

---

[12] Defendants argue that Pertillar's allegations regarding the lead driver promotion should be disregarded because he included them in his November 2014 EEOC charge.  (Dkt. No. 16, Attach. 14 at 15-18.)  But because Pertillar never received a right to sue notice for his November 2014 EEOC charge, there was no failure to file a timely suit regarding the facts in that charge.  *Cf. McLeod*, 2010 WL 4366901, at *5-6; *Hill*, 467 F. Supp. 2d at 370.  And "a plaintiff's failure to obtain a [right to sue notice] is not a jurisdictional bar, but only a precondition to bringing an action that can be waived by the parties or the court."  *Palmer v. N.Y. State Office of Court Admin.*, No. 5:00-CV-00110, 2007 WL 2362360, at *1 (N.D.N.Y. Aug. 13, 2007) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

[13]  The relevant part of *Burgis* concerned a Section 1981 claim.  However, the same standard applies to racial discrimination claims under Title VII or Section 1981.  *See Karam v. County of Rensselaer*, No. 1:13-cv-01018, 2016 WL 51252, at *14 (N.D.N.Y. Jan. 4, 2016).

14

*id.*

The only other allegations, including that Pertillar faced disciplinary action that "was based in whole or part on P[ertillar]'s race and/or protected activity," "[e]mployees who are not minorit[ies] . . . are not treated in such fashion," and "P[ertillar] continues to be subjected to discriminatory . . . practices and treatment," (Am. Compl. ¶¶ 13, 22, 25), are "naked assertion[s] devoid of further factual enhancement" that are insufficient to defeat a motion to dismiss. *Pension Benefit*, 712 F.3d at 717 (internal quotation marks and citation omitted).[14]

In *Morales v. Long Island Rail Road Company*, No. 09 CV 8714, 2010 WL 1948606, at *1, *4 (S.D.N.Y. May 14, 2010) (Dkt. No. 21 at 8, 10), allegations that a plaintiff was punished for praying with his eyes closed and "employees of other races [were] caught actually sleeping and [did] not receive[] any sort of punishment" were sufficient to survive a motion to dismiss. Here, in contrast, Pertillar simply asserts that non-minority employees are not treated in the same fashion, without alleging any non-conclusory comparison of treatment. "I am (fill in the protected

---

[14] As explained above, Pertillar's claims are untimely to the extent that they involve Walser's conduct or any other facts contained within the first two EEOC charges that Pertillar filed. *See supra* Part IV.B.1.

class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class) . . . is a false syllogism . . . that does not support any inference of discrimination." *Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10 Civ. 2548, 2011 WL 744738, at *3 (S.D.N.Y. Mar. 1, 2011).[15]

### c.   Retaliation

A plaintiff claiming retaliation under Title VII must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 113 (2d Cir. 2000).  Here, Pertillar alleges that he "continued to complain about the ongoing discriminatory and retaliatory treatment towards him" and filed a second complaint with the EEOC in November 2014.  (Am. Compl. ¶ 21; Dkt. No. 16, Attach. 7 at 5.)  "Thereafter, P[ertillar] was

---

[15] Pertillar's citation to *Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) is unavailing. (Dkt. No. 21 at 9-10.)  Not only did that case involve a *pro se* plaintiff, but the plaintiff in that case "identified the particular events giving rise to her claim" and "describe[d] [defendant]'s actions," unlike here.  *Boykin*, 521 F.3d at 215, 216.

16

subjected to a[] . . . three (3) day suspension without pay and [a] 'final written warning' in December 2014" and "[s]aid disciplinary action was based in whole or part on P[ertillar]'s . . . protected activity." (Am. Compl. ¶ 22.)[16]

"[T]he filing of an EEOC complaint is a protected activity." *Simpson v. N.Y. State Dep't of Civil Serv.*, No. 02-CV-1216, 2005 WL 545349, at *20 (N.D.N.Y. Mar. 1, 2005), *aff'd sub nom. Simpson v. N.Y. State Dep't of Civil Servs.*, 166 F. App'x 499 (2d Cir. 2006). And defendants do not argue that AAA did not know of Pertillar's November 2014 EEOC charge; indeed, the charge was addressed to AAA. (Dkt. No. 16, Attach. 7 at 5.) Third, a "suspension without pay [i]s an adverse employment action." *Imperato v. Otsego Cty. Sheriff's Dep't*, No. 3:13-cv-1594, 2016 WL 1466545, at *15 n.15 (N.D.N.Y. Apr. 14, 2016).

As for the fourth element, although Pertillar's allegation that the "disciplinary action was based in whole or part on [his] . . . protected activity," (Am. Compl. ¶ 22), is conclusory, "a causal connection between protected activity and an adverse employment activity on the basis of

---

[16] Pertillar's allegations of retaliation are within the EEOC charge that he filed in April 2015, for which he received a right to sue notice and timely commenced suit. (Dkt. No. 16, Attach. 9 at 2, 3, 9, 13, 17, 23.)

timing alone[] [can be inferred if] the temporal proximity [is] 'very close.'"

*Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 616 (S.D.N.Y. 2008), *aff'd*,

355 F. App'x 487 (2d Cir. 2009) (quoting *Clark Cty. Sch. Dist. v. Breeden*,

532 U.S. 268, 273 (2001)).  Here, Pertillar alleges that his suspension

without pay occurred the month following his November 2014 EEOC filing.

(Am. Compl. ¶¶ 21-22.)  At least one court in this Circuit has held that

temporal proximity of just over one month between the filing of an EEOC

charge and a suspension is "arguably 'very close.'"  *See Bush v. Fordham*

*Univ.*, 452 F. Supp. 2d 394, 417 (S.D.N.Y. 2006).  Thus, the court will not

dismiss Pertillar's Title VII retaliation claim at this stage.

    *3.*    *Section 1981 Claims*

        *a.*    *AAA*

The standards applicable to Pertillar's Section 1981 claims are the

same as those applicable to his Title VII claims.  *See Whidbee v.*

*Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (standard

for hostile work environment claims same under Title VII or Section 1981);

*Taitt v. Chem. Bank,* 849 F.2d 775, 777 (2d Cir.1988) (standard for

retaliation claims same under Title VII or Section 1981); *Karam v. County*

*of Rensselaer*, No. 1:13-cv-01018, 2016 WL 51252, at *14 (N.D.N.Y. Jan.

4, 2016) (standard for discrimination claims same under Title VII or

Section 1981).  However, unlike Title VII, Section 1981 does not require

an EEOC filing or right to sue notice prior to bringing suit, and thus the

facts in Pertillar's first two EEOC filings may be considered.  *See Goss v.*

*Revlon, Inc.*, 548 F.2d 405, 407 (2d Cir. 1976) (per curiam); *Brown v.*

*Castleton State Coll.*, 663 F. Supp. 2d 392, 399 (D. Vt. 2009).[17]

> These allegations include
>
> [Pertillar's supervisor] hiding behind trucks and taking pictures of [him], hoping he would catch [him] doing something wrong.  This . . . caused P[ertillar] to be distracted daily, making it more difficult for him to do his job. . . . [Pertillar's supervisor] and others . . . almost r[an] P[ertillar] over with a truck, constantly singl[ed] [him] out, berat[ed] [him], attempt[ed] to turn co-workers against [him], solicit[ed] negative opinions about [him], f[ound] fault with [him] and his performance, monitor[ed] and photograph[ed] [him], [and] assign[ed] [him] a dangerous truck with no seat belts and other major problems, etc.

(Am. Compl. ¶¶ 14, 17.)  These events cannot state a hostile work

environment claim unless they occurred because of Pertillar's race (or

other protected characteristic).  *See Johnson v. IAC/Interactive Corp.*, 2 F.

Supp. 3d 504, 516 (S.D.N.Y. 2014) (citing *Brown v. Henderson*, 257 F.3d

246, 252 (2d Cir. 2001)).  But circumstantial evidence may suffice, and

---

[17] The court notes that defendants did not argue that Pertillar's Section 1981 claims are untimely.  (Dkt. No. 16, Attach. 14; Dkt. No. 22.)

Pertillar need not demonstrate that his race was the only motivating factor of a hostile working environment.  *See Rivera*, 743 F.3d at 23.  Pertillar's allegations that his numerous complaints about his supervisor's conduct went unanswered but complaints from a Caucasian employee resulted in that supervisor's termination constitute such circumstantial evidence. (Am. Compl. ¶¶ 17,18.)

In drawing all reasonable inferences in Pertillar's favor at the motion to dismiss stage, by a very thin margin Pertillar has sufficiently stated a hostile work environment claim under Section 1981 against AAA.  *See Rivera*, 743 F.3d at 20, 23.  Pertillar's Section 1981 retaliation claim against AAA also survives, for the same reasons as above.  *See supra* Part IV.B.2.c.  However, Pertillar's discrimination claim under Section 1981 against AAA fails, for the same reasons as above.  *See supra* Part IV.B.2.b.

> b.   *Skellington and Britton*

Moreover, all of Pertillar's Section 1981 claims against Skellington and Britton fail.  His only allegations concerning Skellington and Britton are as follows: they "prompted" his suspension by making "false accusations impugning his behavior at work and his work performance,"

20

(Am. Compl. ¶ 23); they "made statements to other [AAA] employees . . . that they wanted to 'figure out' how to discipline [him] and were heard complaining that they were not allowed to do so without the participation of Human Resources," (*id.* ¶ 23); and they made false accusations that he refused calls, (*id.* ¶ 24).

Nothing in the amended complaint alleges—even in a conclusory fashion—that Skellington and Britton did any of those things because of Pertillar's race. (*Id.* ¶¶ 23-24); *see supra* Part IV.B.2.a. In fact, Pertillar alleges that they targeted him "for discipline *based on false accusations impugning his behavior at work and his work performance*," not his race. (Am. Compl. ¶ 23 (emphasis added).) Without a causal relation to race, Pertillar's Section 1981 claims of hostile work environment and discrimination fail against Skellington and Britton. *See Rivera*, 743 F.3d at 20; *Brown*, 673 F.3d at 150.[18] And as defendants point out, (Dkt. No. 22 at 9), there are no allegations to suggest that Skellington and Britton knew that Pertillar filed an EEOC charge, which is fatal to his Section 1981 retaliation claim. *See Gordon*, 232 F.3d at 113.

---

[18] Additionally, their alleged conduct is not sufficiently severe or pervasive to support a hostile work environment claim. *See supra* Part IV.B.2.a.

Moreover, "to make out a claim for individual liability under § 1981, a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . [p]ersonal liability under [§] 1981 must be predicated on the actor's personal involvement." *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (internal quotation marks and citation omitted).  Pertillar's retaliation claim against Skellington and Britton also fails in this regard.  The amended complaint alleges that Skellington and Britton merely "prompted" his suspension, and admits that they lacked the ability to discipline him themselves.  (Am. Compl. ¶ 23.) Pertillar's argument that there was personal involvement, (Dkt. No. 21 at 13-14), merely rehashes the amended complaint and offers no reason to find as such.

### 4.    New York Constitution Claims

Pertillar brings two claims under the New York Constitution: one that defendants violated Section 11 of Article I (Section 11) and one for retaliation.  (Am. Compl. ¶¶ 36-37, 45-46; Dkt. No. 21 at 14-15.)  Section 11 states that "[n]o person shall, because of race . . . be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution[.]"  N.Y. Const., Art. I, § 11.

> [A] [p]laintiff[] do[es] not have a private right of action for . . . discrimination under Section 11 of the New York Constitution. This conclusion flows directly from [a] New York Court of Appeals' decision . . . which held that "[i]t is implicit in the language of [the second sentence of Section 11], and clear from a reading of the constitutional debates, that this part of the section was not intended to create a duty without enabling legislation but only to state a general principle recognizing other provisions in the [New York] Constitution[.]"

*Soliman v. City of N.Y.*, 15-CV-5310, 2017 WL 1229730, at *8 (E.D.N.Y. Mar. 31, 2017) (quoting *Brown v. New York*, 89 N.Y.2d 172, 190 (1996)). One of those provisions is the New York Human Rights Law,[19] which Pertillar initially brought a claim under in his original complaint before withdrawing it from his amended complaint. (Compl. ¶¶ 36-37.) This is consistent with the principle that "New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff." *Felmine v. City of N.Y.*, No. 09–CV–3768, 2012 WL 1999863, at *6 (E.D.N.Y. June 4, 2012). Further, Section 11 does not mention retaliation, and apart from Section 11 itself, Pertillar offers no authority to support his Section 11 claims. (Dkt. No. 21 at 14-15.)[20]

---

[19] *See Brown*, 89 N.Y.2d at 190; *Leahy v. Gap, Inc.*, Civil Action No. 07-2008, 2008 WL 2946007, at *5 n.4 (E.D.N.Y. July 29, 2008).

[20] Even assuming Pertillar could bring a cause of action under Section 11 of the New York Constitution, he would not have a viable claim against Skellington or Britton, for the reasons explained above. *See supra* Part IV.B.3.b.

## V.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Pertillar's cross-motion to amend his complaint (Dkt. No. 21) is **GRANTED**, and he is directed to file his amended complaint immediately; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 16) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **DENIED** as to the second cause of action in Pertillar's amended complaint for a violation of Section 1981 as against AAA (Am. Compl. ¶¶ 33-34), the fourth cause of action in Pertillar's amended complaint for Title VII retaliation against AAA (Am. Compl. ¶¶ 39-40), and the fifth cause of action in Pertillar's amended complaint for Section 1981 retaliation as against AAA (Am. Compl. ¶¶ 42-43); and

> **GRANTED** in all other respects; and it is further

**ORDERED** that the Clerk terminate defendants Rollin Skellington and Joseph Britton from this action; and

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

24

**IT IS SO ORDERED.**

January 26, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge